# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

DeAnthony Doane, )
    Petitioner, )
)
v. ) 1:09cv1154 (GBL/JFA)
)
Gene Johnson, )
    Respondent. )

## MEMORANDUM OPINION

THIS MATTER is before the Court on petitioner DeAnthony Doane's pro se petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, which challenges the constitutionality of his conviction of second degree murder in the Circuit Court of the City of Richmond, Virginia. By Order dated November 20, 2009, petitioner was directed either to pay the applicable filing fee required by 28 U.S.C. §1914(a) or to apply to proceed in forma pauperis in this action, and to file an amended petition using the form Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus. Petitioner was granted an extension of time to comply with those instructions, and when no amended petition was filed by February 26, 2010, the petition was dismissed, without prejudice. Petitioner noticed an appeal of the dismissal, and simultaneously filed a Petition for Rehearing, in which he explained that he had mistakenly mailed the amended petition to the wrong court. Consequently, on June 11, 2010, the Court construed the Petition for Rehearing as a Motion for Reconsideration pursuant to Fed. R. Civ. P. 60(b) and entered a Memorandum of Intent, indicating its inclination to grant rehearing. On September 13, 2010, a motion for a limited remand of jurisdiction filed by petitioner was granted by the Fourth Circuit Court of Appeals, and by Order entered September 14, 2010, petitioner's Motion for Rehearing was

granted, the February 26 Order of dismissal was vacated, and petitioner was allowed thirty (30) days within which to file an amended petition in compliance with the Order of November 20, 2009. Petitioner was expressly cautioned that the amended petition would serve as the sole operative petition in the case. Petitioner submitted an amended petition on October 19, 2010.

On January 6, 2011, respondent filed a Rule 5 Answer and Motion to Dismiss the amended petition with a supporting brief and exhibits. Petitioner was given the opportunity to file responsive materials, pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), and after seeking an extension of time to file a reply, petitioner moved for leave to amend his petition. Because no proposed amended petition was provided, an Order was entered on February 14, 2011, denying Petitioner's Motion for Leave to Amend without prejudice to his ability to submit a renewed motion along with a proposed amended petition within thirty (30) days. Petitioner was expressly cautioned that if a renewed Motion for Leave to Amend with a proposed Amended Complaint was not filed within the time specified, the Amended Petition filed on October 19, 2010, would remain the operative petition in the case. Petitioner was also granted an additional thirty (30) days within which to reply to the respondent's Motion to Dismiss. Petitioner has filed nothing further in the action. Upon careful review of the amended petition, the Court finds that this habeas corpus application must be dismissed.

## I. BACKGROUND

On May 31, 2006, a jury found petitioner guilty of second degree murder and use of a firearm in commission of a murder. Resp. Ex. 1. The underlying facts were described by the Court of Appeals of Virginia as follow:

> [T]he evidence proved that on November 13, 2005, a Richmond police officer, William House, responded to a call of shots fired in the

2

2300 block of the Fairfield Court neighborhood, in the City of Richmond, which was a 'high crime drug area.' As House was going through the 2300 block of Selden, several persons flagged him down and waved him towards Rosetta Street. House jumped out of his vehicle, and ran over. Persons were yelling, 'He's shot. Come quick.' House found the victim, who had been shot in the head. The victim was later identified as Clarence Coleman. The parties stipulated that the homicide occurred at 6:25 p.m.

Detective Carol Adams testified that certain substances, which were found near the location of the victim's body, were possibly cocaine or heroin. Appellant's fingerprints were not found on the cartridge casings collected from the scene. Appellant's fingerprints were also not found on a shotgun provided to Adams by Detective Gochenour as part of the investigation.

Shannon Lewis testified that on November 13, 2005, she met appellant, her friend, sometime between 4:00 and 5:00 p.m. in Mosby Court. They went across the street to an apartment and hung out for a couple of hours, until around 8:00 or 9:00 p.m. Then Nita Mayo and Tiffany Williams picked them up. Lewis testified that Mayo took her home, which was about five minutes away from where Mayo picked her up in Mosby Court. Lewis did not see appellant with a firearm during the time she was with him.

Mayo testified that on the evening of November 13, 2005, she was driving with her friend, Williams, and they picked up appellant and Lewis, around 6:00 p.m. or 7:00 p.m., when appellant flagged her down and asked her to take him and Lewis home. Mayo was not certain of the time, but knew it was dark outside when she encountered appellant. Williams believed it was mid-evening when she and Mayo encountered appellant and Lewis. Williams stated that it was getting dark outside and there was not much light left. Mayo and Williams rode in the front seat and appellant and Lewis in the back. Mayo drove Lewis home, dropping her off at 23rd Street. Then appellant moved behind the front passenger seat and conversed with some men on 23rd Street, asking them where to find some marijuana. Then Mayo drove appellant into Fairfield Court. Mayo drove down Rosetta Street at appellant's direction, and then appellant told her to make a U-turn and double back. As Mayo drove back down Rosetta Street, she heard a shot ring out from the back of her vehicle. She turned around and looked back and saw appellant leaning out the of the back passenger window, pointing a gun and firing it at least three or four more times into a crowd of twenty-five to thirty people. Mayo

3

> was scared and kept driving. She took appellant back to Accommodation Street and told him to get out of her vehicle. He told her that if 'any family members do anything to [her] truck, he [would] buy [her] a new one.' Mayo knew that appellant was referring to family members of 'Boo Man.' Appellant exited the vehicle. Then Mayo dropped off Williams and went home. The next day, Mayo and Williams went to the police and told them what happened. Williams admitted she had previously been convicted of a misdemeanor involving moral turpitude. Williams did not see appellant shooting the gun, but heard the shots.

Doane v. Commonwealth, R. No. 1865-06-2 (Va. Ct. App. Feb. 13, 2007), slip op. at 2 - 3; Resp. Ex. 2. Petitioner was sentenced to serve an aggregate of thirty-eight (38) years in prison. Resp. Ex. 1. Petitioner's direct appeal, in which he challenged the sufficiency of the evidence upon which he was convicted, was denied by the Court of Appeals of Virginia on February 13, 2007, id., and the Supreme Court of Virginia subsequently refused a petition for further review. Doane v. Commonwealth, R. No. 070408 (Va. June 28, 2007); Resp. Ex. 3.

On June 17, 2009, Doane filed a petition for a state writ of habeas corpus in the trial court, raising the same claims he makes in this federal action. Resp. Ex. 4. By Order entered January 7, 2009, the petition was denied and dismissed. Resp. Ex. 6. The Supreme Court of Virginia refused a petition for appeal of that determination. Doane v. Dir., Dep't of Corrections, R. No. 090975 (Va. Aug. 17, 2009); Resp. Ex. 8.

Petitioner then turned to the federal forum and timely filed this application for relief pursuant to § 2254. In the amended petition, the operative petition in the case (Docket # 43), he makes the following arguments:

    1.    He received ineffective assistance of counsel when his attorney failed to investigate an insanity defense.

    2.    He was denied effective assistance of counsel when his attorney failed timely to disclose pretrial discovery

concerning the time of the murder.

3. He received ineffective assistance of counsel when his attorney presented an alibi claim without first discussing the matter with petitioner.

4. Counsel rendered ineffective assistance by failing to properly resolve or follow up on a sustained objection.

5. He was denied effective assistance of counsel when his attorney objected to bad character evidence, but failed to ask for a curative instruction.

6. He received ineffective assistance of counsel when his attorney failed to object to the prosecutor's personal insinuations.

7. He was denied effective assistance of counsel when his lawyer failed to investigate witnesses who could have placed him at a different location when the crimes were committed.

8. He received ineffective assistance of counsel when his attorney failed to investigate exculpatory fingerprint and DNA evidence.

Respondent acknowledges correctly that petitioner's claims are exhausted.[1] Therefore, the petition is ripe for review on the merits.

---

[1] Before bringing a federal habeas petition, a state prisoner must first exhaust his claims in the appropriate state court. See 28 U.S.C. § 2254(b); Granberry v Greer, 481 U.S. 129 (1987); Rose v. Lundy, 455 U.S. 509 (1982); Preiser v. Rodriguez, 411 U.S. 475 (1973). To comply with the exhaustion requirement, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Thus, a petitioner convicted in Virginia must first have presented the same factual and legal claims raised in his § 2254 application to the Supreme Court of Virginia on direct appeal, or in a state habeas corpus petition. See, e.g., Duncan v. Henry, 513 U.S. 364 (1995).

## II. DISCUSSION

### A. Standard of Review

When a state court has addressed the merits of a claim raised in a federal habeas petition, a federal court may not grant the petition based on the claim unless the state court's adjudication is contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Whether a state court decision is "contrary to" or "an unreasonable application of" federal law requires an independent review of each standard. See Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court determination runs afoul of the "contrary to" standard if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Id. at 413. Under the "unreasonable application" clause, the writ should be granted if the federal court finds that the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. Importantly, this standard of reasonableness is an objective one. Id. at 410. Under this standard, "[t]he focus of federal court review is now on the state court decision that previously addressed the claims rather than the petitioner's free-standing claims themselves." McLee v. Angelone, 967 F.Supp. 152, 156 (E.D. Va. 1997), appeal dismissed, 139 F.3d 891 (4th Cir. 1998) (table).

In all of his federal claims, Doane argues that he received ineffective assistance of counsel for various reasons. To establish ineffective assistance, a petitioner must show that (1)

"counsel's performance was deficient" and (2) "the deficient performance prejudiced the defendant." Strickland v. Washington, 466 U.S. 668, 687 (1984). To prove that counsel's performance was deficient, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness" id. at 688, and that the "acts and omissions" of counsel were, in light of all the circumstances, "outside the range of professionally competent assistance." Id. at 690. Such a determination "must be highly deferential," with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also, Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000) (reviewing court "must be highly deferential in scrutinizing [counsel's] performance and must filter the distorting effects of hindsight from [its] analysis"); Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994) (court must "presume that challenged acts are likely the result of sound trial strategy").

To satisfy Strickland's prejudice prong, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.; accord, Lovitt v. True, 403 F.3d 171, 181 (4th Cir. 2005). The burden is on the petitioner to establish not merely that counsel's errors created the possibility of prejudice, but rather "that they worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimension." Murray v. Carrier, 477 U.S. 478, 494 (1986) (citations omitted, emphasis original). The two prongs of the Strickland test are "separate and distinct elements of an ineffective assistance claim," and a successful petition "must show both deficient performance and prejudice." Spencer, 18 F.3d at

7

233. Therefore, a court need not review the reasonableness of counsel's performance if a petitioner fails to show prejudice. Quesinberry v. Taylor, 162 F.3d 273, 278 (4th Cir. 1998).

**B. Analysis**

**Claim One**

In his first claim, Doane argues that he received ineffective assistance of counsel when his attorney failed to investigate an insanity defense. In its order denying and dismissing Doane's state habeas corpus application, the trial court first discussed the requirements of Strickland, supra, and then found this argument to be without merit for the following reasons:

> 5. In claim 1, the petitioner alleges that counsel was ineffective for failing to adequately investigate, discover and present evidence of the petitioner's mental illness/ insanity at the time of the offense or at the time of trial. The petitioner asserts that an evaluation would have yielded a basis for an insanity defense or a finding [of] lack of competence to stand trial.
>
> 6. With regard to the issue of incompetence to stand trial, the petitioner has supplied nothing but his bare assertion that he suffered from a mental condition which would have rendered him legally incompetent.
>
> 7. '[T]he burden imposed upon a habeas petitioner to demonstrate incompetency in fact at the time of trial is extremely heavy.' Flugence v. Butler, 848 F.2d 77, 79 (5th Cir. 1988) (citation omitted).
>
>> Unless the facts 'positively, unequivocally and clearly' generate a 'real, substantial and legitimate doubt as to the mental capacity' of the defendant to knowingly plead, a court will not find the defendant entitled to habeas relief.
>
> Id. (Citation omitted).
>
> 8. The issue in the competency area is not whether a defendant has experienced mental illness, the issue is whether the criminal defendant understands the proceeding and has the present ability to assist counsel. See Eddmonds v. Peters, 93 F.3d 1307, 1314 (7th Cir.

1996); see also Bramblett v. Commonwealth, 257 Va. 263, 273, 513 S.E.2d 400, 407 (1999).

9. Furthermore, while the opinion of a defendant's trial counsel on the issue of competency is not 'determinative,' such counsel 'is in the best position to evaluate a client's comprehension of the proceedings.' Hernandez v. Ylst, 930 F.2d 714, 718 (9th Cir. 1991). See also Burket, 208 F.3d at 192 - 193. Counsel notes in his affidavit that petitioner was competent.

10. The record that [sic] the petitioner responded appropriately to the Court's questions and spoke lucidly. He did not display confusion or lack of understanding. See McWee, 283 F.3d at 186; Burket, 208 F.3d at 192.

11. As to the issue of insanity at the time of the offense, the Supreme Court of Virginia discussed the insanity defense in Commonwealth v. Chatman, 260 Va. 562, 538 S.E.2d 304 (2000), and held as follows:

> In Virginia we have recognized the defense of insanity as set forth in M'Naghten's Case, 10 Cl. And F. 200, 8 Eng. Rep. 718 (H.L. 1843), since 1871. Price v. Commonwealth, 228 Va. 452, 459, 323 S.E.2d 106, 110 (1984); Dejarnette v. Commonwealth, 75 Va. 867, 876 - 78(1881); Boswell v. Commonwealth, 61 Va. (20 Gratt.) 860, 874 - 76 (1871). Under the M'Naghten definition, an accused must establish that he or she did not know the difference between right and wrong, or that he or she did not understand the nature and consequences of the acts in question. Price, 228 Va. at 457 - 58, 323 S.E.2d at 108 - 09.

Id. at 567, 538 S.E.2d at 306. Both facets of the M'Naghten test 'require a showing of a disease of the mind.' Herbin v. Commonwealth, 28 Va. App. 173, 181, 503 S.E.2d 226, 231 (1998). See also Breard v. Commonwealth, 248 Va. 68, 84, 445 S.E.2d 670, 679 (1994). Furthermore, with regard to guilt or innocence, a mental state other than the legal definition of insanity is immaterial. See Stamper v. Commonwealth, 228 Va., 707, 716 - 17, 324 S.E.2d 682, 688 (1985).

12. The petitioner has not proffered that he had a mental disease which resulted in insanity under the strict standard of M'Naghten. He

9

> has not proffered evidence of legal insanity. In his affidavit, counsel
> notes that he did not find that anything which [sic] would warrant an
> evaluation. There is no merit to petitioner's claim.

Resp. Ex. 6 at 4 - 6. Because the foregoing order was the last reasoned state court decision on the claims at issue, its reasoning is imputed to the Supreme Court of Virginia, which refused further review without explanation. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

For the reasons which are clearly explained in its order, the state court's rejection of Doane's first claim was based on a reasonable interpretation of the facts. Doane offered no more than a bare assertion that he suffered from a mental condition which allegedly rendered him incompetent to stand trial. As the court found, such an unsupported and conclusory contention falls far short of the facts necessary to meet the "extremely heavy" burden a habeas petitioner must meet under federal law to demonstrate incompetency. Flugence, 848 F.2d at 79. Moreover, in an affidavit filed in the state habeas corpus proceeding, counsel attested that in his dealings with Doane he "had no reason to believe that [Doane] was insane at the time of the offense or not competent to stand trial." Resp. Ex. 5, Aff. at ¶ 1. While not determinative, an attorney's opinion of a defendant's competency carries great weight, as counsel "is in the best position to evaluate a client's comprehension of the proceedings." Hernandez, 930 F.2d at 718. Under these circumstances, the state court's conclusion that counsel did not render deficient performance by failing to pursue an insanity defense is in accord with the controlling authority of Strickland, supra, so its denial of relief on Doane's first claim must be allowed to stand. Williams v. Taylor, supra.

**Claims Two and Three**

In his second and third claims, Doane contends that his attorney provided ineffective assistance with respect to an alibi defense, by failing to disclose the alibi defense to the

prosecution in a timely manner and by failing to discuss the alibi with petitioner. In his affidavit, counsel explained that during his investigation of the case, he asked Doane about an alibi, and Doane advised that he was at a Chucky Cheese Restaurant on Broad Street when the crime occurred and gave counsel the names of two witnesses. In the reciprocal discovery required by the rules of court, counsel advised the Commonwealth of this alibi. However, counsel experienced "great difficulty" in finding the witnesses Doane had named. Eventually counsel located one witness who was at a party Doane had mentioned, but that witness stated that Doane arrived after the time of the shooting and bragged that he had shot the deceased. Doane thereupon agreed that this alibi was not one he wished to pursue, and stated that he was on Accommodation Street rather than at Chucky Cheese when the murder occurred. Counsel advised the Commonwealth that Doane's alibi was at a residence on Accommodation Street. However, Doane never provided counsel with either the address of the residence or the names of any witnesses who could support the second alibi. At the beginning of trial, in order to preserve the issue in the event Doane elected to testify, counsel requested that the Accommodation Street alibi be allowed, and the court ruled in his favor. However, after the Commonwealth rested, counsel discussed with Doane whether Doane should testify, and Doane decided not to do so. The Accommodation Street alibi defense therefore became a moot point. Resp. Ex. 5, Aff. at ¶¶ 3 - 5.

In denying relief on these claims in the state habeas action, the trial court held:

> 13. As to petitioner's Claims 2a and 2b, the transcript of trial reveals that prior to trial, the Commonwealth had sought to prevent the defendant relying on an alibi not previously disclosed. Petitioner's early alibi was that he was at a Chucky Cheese Restaurant on Broad Street. At the time of trial, the petitioner wanted to rely on the fact that he was at a residence on Accommodation Street. (Tr. 8 -

11

12).

14. Ultimately the Court ruled that the Accommodation Street [sic] would be allowed. (tr. 12).

15. Trial counsel had fully discussed with the petitioner his alibi. Petitioner had advised counsel that he was at the Chucky Cheese Restaurant on Broad Street and gave counsel the names of two witnesses. In reciprocal discovery required under the rules of Court, counsel had to advise the Commonwealth of the petitioner's alibi. Trial counsel finally located one of the petitioner's witnesses who stated that Doane arrived after the time of the shooting at Chucky Cheese and bragged that he had shot the deceased. See Ex. 1, copy of Affidavit. After discussion with Doane, he agreed that this alibi was not one he wished to pursue and stated that he was on Accommodation Street and not at Chucky Cheese Restaurant as previously stated. Petitioner never gave counsel the address of the residence or the names of any witnesses who could support his alibi on Accommodation Street. Consequently, trial counsel in order to preserve the issue should Doane himself decide to testify about such an alibi requested the Court to allow the defendant's alibi and the Court ruled in the defendant's favor. The issue, however, became moot because Doane elected not to testify. See Exhibit 1, Copy of Affidavit. Petitioner's claim is totally without merit and is therefore denied.

Resp. Ex. 6 at 6 - 7.

For the factual reasons which are clearly articulated in its order, the state court's conclusion that Doane's second and third claims are "totally without merit" is well supported by the record. Because that determination comports with controlling authority of Strickland, supra, the claims also must be dismissed here. Williams v. Taylor, supra.

**Claims Four and Five**

In his next two claims, petitioner argues that his trial counsel provided ineffective assistance in connection with evidence of petitioner's bad character elicited during the direct examination of a prosecution witness named Shannon Lewis. Specifically, Doane argues that

12

counsel failed to "follow up" when an objection to the witness' testimony was sustained by asking for a curative instruction. The record reveals that the witness testified "she knew" Doane "for carrying a gun," and a defense objection was sustained. Tr. 5/31/2006 at 49. In his affidavit submitted in the state habeas corpus proceeding, counsel explained that he "made a tactical decision not to ask for a [curative] instruction which would only further highlight the issue. Moreover, [he] knew that the Commonwealth would present a witness who witnessed the shooting." Resp. Ex. 5, Aff. at ¶ 6. The court in the state habeas proceeding noted that "counsel felt that [the sustaining of his objection] was sufficient" and "did not desire to highlight the issue any further" by asking for a curative instruction. Accordingly, the court held that "[t]he petitioner has demonstrated neither deficient performance or prejudice," and ineffective assistance had not been demonstrated. Resp. Ex. 6, ¶ 16.

It is well established in federal jurisprudence that a lawyer's "'strategic choices made after thorough investigation ... are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" Gray v. Branker, 529 F.3d 220, 229 (4th Cir.), cert. denied, 129 S. Ct. 1579 (2009), quoting Strickland, 446 U.S. at 690-91. This Court must accept the state court's factual determination that counsel made a tactical decision not to highlight the bad character evidence further by asking for a curative instruction after his objection was sustained. See Evans v. Thompson, 881 F.2d 117, 125 (4th Cir. 1989). For that reason, the state courts' rejection of Doane's argument that he thereby received ineffective assistance was neither contrary to nor an unreasonable application of the controlling federal law, Strickland, supra, nor was it based on an unreasonable determination of the facts.

Thus, the same result must be reached here. Williams, 529 U.S. at 412-13.

**Claim Six**

In his sixth claim, Doane faults his attorney for failing to object to "personal insinuations" or improper comments by the prosecutor during opening and closing statements. However, counsel attested that he did not find the Commonwealth's arguments to be objectionable and "would not have wanted to object to the Commonwealth's argument unless it was extremely prejudicial for fear of highlighting it to the jury." Resp. Ex. 5, Aff. at ¶ 7. The state court in denying relief on this claim noted that it was counsel's practice not to highlight arguments by the Commonwealth to the jury unless they were extremely prejudicial, and in this instance, "those arguments which the petitioner now says were objectionable were proper arguments supported by the evidence" because a "prosecutor is allowed to argue the evidence and any reasonable inferences to be drawn from the evidence." Accordingly, "[p]etitioner has demonstrated neither deficient performance nor prejudice." Resp. Ex. 6, ¶ 17. The state courts' holding in this regard was neither contrary to nor an unreasonable application of the controlling federal law, Strickland, supra, nor was it based on an unreasonable determination of the facts. Thus, federal relief likewise is unavailable on this claim. Williams, 529 U.S. at 412-13.

**Claim Seven**

In his seventh claim, petitioner alleges that he was denied effective assistance of counsel when his lawyer failed to investigate witnesses who could have placed him at a different location when the crimes were committed. Specifically, in the state habeas proceeding, petitioner complained that his attorney failed to call Rachelle Williams to testify that one of the Commonwealth's witnesses would have said that she was paid with drugs and money to take

14

Doane to the crime scene. In the affidavit filed in the state habeas action, counsel stated his investigation had revealed that Ms. Williams' testimony would have corroborated part of other witnesses' testimony about the time of the murder and Doane's presence in the vehicle. Counsel discussed this with Doane and "Doane agreed that we should not call her as a witness." Resp. Ex. 5, Aff. at ¶ 8. The state circuit court found that neither prong of the Strickland analysis was satisfied by this claim, Resp. Ex. 6, ¶ 18, and that result patently was a reasonable application of the settled federal principle that a strategic choice by counsel does not amount to ineffective assistance. Gray, 529 F.3d at 229. Accordingly, this claim warrants no relief, and will be dismissed.

**Claim Eight**

In his eighth and final claim, petitioner contends that his counsel provided ineffective assistance by failing to investigate fingerprint and DNA evidence in an attempt to identify the person who left them in the back seat of the car in which Doane was riding. In his affidavit, however, counsel explained that he called Sarah Seashols, a forensic expert, to testify at trial that the DNA and fingerprints were not Doane's. Counsel reasoned that "[s]ince the Commonwealth had the burden of proving that the defendant committed the crime beyond a reasonable doubt, it was [his] belief that the fact that no DNA or fingerprints of the defendant [were found] in the back seat would help show a reasonable doubt." Resp. Ex. 5, Aff. at ¶ 9. The state habeas court concluded that counsel's effort in this regard was "a reasonable trial tactic to have that [forensic] evidence before the jury." Resp. Ex. 6, ¶ 19. The court also noted that "petitioner has not shown that analysis of fingerprints or DNA would have identified anyone. Moreover, the petitioner got as much benefit as he was entitled to by the fact that none of his fingerprints or DNA was found

15

in the automobile." Id. These conclusions by the state court were based on a reasonable interpretation of the facts and were not contrary to applicable federal authorities. Strickland, supra; Gray, 529 F.3d at 229. Therefore, the same result must pertain here. Williams, 529 U.S. at 412-13.

## III. CONCLUSION

For the foregoing reasons, respondent's Motion to Dismiss will be granted, and this petition for habeas corpus relief will be dismissed with prejudice. An appropriate Order shall issue.

Entered this 29th day of April 2011.

/s/
Gerald Bruce Lee
United States District Judge

Alexandria, Virginia